UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
RYAN ENGUERRA and FROILEX RAVELAS,　　　)
on behalf of themselves and all others similarly　)
situated,　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　Plaintiffs,　　)　　Docket No. 25-cv-
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　- against -　　　　　　　　　　　　)　　**CLASS AND COLLECTIVE**
　　　　　　　　　　　　　　　　　　　　　　)　　**ACTION COMPLAINT**
FOOD SYSTEMS UNLIMITED, INC., CHINA　　)
CHAO, INC., BIAGIO SCHIANO, and　　　　　)　　**Jury Trial Demanded**
ROY HUI,　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　Defendants.　　)
-----------------------------------------------------------------------x

　　　　Plaintiffs, RYAN ENGUERRA ("Enguerra") and Froilex Ravelas ("Ravelas"), by and

through their attorney, Felix Q. Vinluan, Esq., for their Collective and Class Action Complaint

against Defendants FOOD SYSTEMS UNLIMITED, INC. ("Food Systems"), CHINA CHAO,

INC. ("China Chao"), BIAGIO SCHIANO ("Schiano"), and ROY HUI ("Hui"), allege as

follows:

## PRELIMINARY STATEMENT

　　　　1.　　As part of their regular business practice, the Defendants Food Systems and China

Chao, and their principal owners and executives, Defendants Schiano and Hui, have

intentionally, willfully and repeatedly engaged in a pattern, practice, and/or policy of violating

the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), the New York Labor Law

Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations,

12 N.Y.C.R.R. Part 142 ("NYLL") with respect to Plaintiffs and similarly situated employees by

failing to pay Plaintiffs and similarly situated employees minimum wage for all their hours of

work; overtime wages for hours they worked in excess of forty (40) hours per week; and failing

1

to pay Plaintiffs and similarly situated employees one additional hour of pay at the basic minimum wage rate for spread-of-hours pay.

## NATURE OF THE ACTION

2.      The Defendants own and/or operate two adjacent commercial fast food restaurants called the "Asian Chao" and "Fuji Grill" restaurants at the Roosevelt Field Mall on Long Island, in Garden City, New York, within this District.

3.      Plaintiff Enguerra performed non-exempt duties for the Defendants, including the preparation, cooking and serving of foods for Defendants' two restaurants. He regularly worked in excess of forty (40) hours each workweek but was not always paid overtime at the rate of one and one-half times his regular hourly rate.

4.      Plaintiff Ravelas performed non-exempt duties for the Defendants, including the preparation, cooking and serving of foods for Defendants' two restaurants. He regularly worked in excess of forty (40) hours each workweek but was not always paid overtime at the rate of one and one-half times his regular hourly rate.

5.      Plaintiffs bring this action under the FLSA, 29 U.S.C. §§ 201 *et seq*. on behalf of themselves and all similarly situated current and former employees of Defendants who elect to opt-in to this action pursuant to the collective action provision of the FLSA, 29 U.S.C. § 216(b) to recover unpaid minimum and overtime wages Defendants owe them and similarly situated current and former employees.

6.      Plaintiffs also bring this action on behalf of themselves and a class of similarly situated current and former employees of Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover unpaid minimum and overtime wages under the New York Labor

Law Article 19, §§ 650 *et seq*., as well as to recover unpaid spread-of-hours pay under the supporting New York State Department of Labor Regulations.

7.      This action also arises out of Defendants' provision and/or obtaining of Plaintiffs' continued labor or services through the use of the threat of serious harm that resulted in the forced labor and wage exploitation of the Plaintiffs by Defendants, in violation of the Trafficking Victims Protection Act, ("TVPA"), 18 U.S.C. §§ 1589, *et seq*.

8.      Plaintiffs were forced under the circumstances to continue working for Defendants despite their complaints of not being paid for all of their hours of work, including overtime pay and spread-of-hours pay, because of Defendants' threats to terminate their employment.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

10.     In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

11.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 since a substantial part of the events or omissions giving rise to the claims occurred in this District.

12.     Defendants do business in the State of New York, within the Eastern District of New York, and maintain a place of business at the Roosevelt Field Mall, 630 Old Country Road, Garden City, NY 11530.

13.    The annual gross income of Defendants' business is more than $500,000.00. Upon information and belief, the average weekly gross sales of Defendants' two fast-food restaurants on Long Island is around $130,000.00.

## PARTIES

14.    Plaintiff Ryan Enguerra is a resident of the County of Queens, State of New York.

15.    At all times relevant to the Complaint, Plaintiff Enguerra was and still is an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and New York Labor Law § 190(2).

16.    At all times relevant to the Complaint, Plaintiff Enguerra was and still is an "employee" within the meaning of 12 N.Y.C.R.R. 146-3.2.

17.    At all times relevant, Plaintiff Enguerra was and still is a "fast-food employee" within the meaning of 12 N.Y.C.R.R. 146-3.13(a).

18.    Plaintiff Froilex Ravelas is a resident of the County of Queens, State of New York.

19.    At all times relevant to the Complaint, Plaintiff Ravelas was and still is an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and New York Labor Law § 190(2).

20.    At all times relevant to the Complaint, Plaintiff Ravelas was and still is an "employee" within the meaning of 12 N.Y.C.R.R. 146-3.2

21.    At all times relevant, Plaintiff Ravelas was and still is a "fast-food employee" within the meaning of 12 N.Y.C.R.R. 146-3.13(a).

22.    At all times relevant, Plaintiffs were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

23.     Throughout Plaintiffs' employment, Plaintiffs used and handled pan trays, fryer baskets, knives, teriyaki scrapers, mixers, barbecue grills, mixer bowls, spoons and tongs that traveled in interstate commerce prior to Defendants' purchasing and sending them over to the two Long Island restaurants for Plaintiffs and other employees to use.

24.     Throughout Plaintiffs' employment, Plaintiffs used and handled bourbon powder seasoning and food sticker dots that had traveled in interstate commerce, having been purchased in Florida, prior Defendants' purchasing and sending them over to the two Long Island restaurants for Plaintiffs and other employees to use.

25.     Defendant Food Systems was and still is a foreign domestic corporation organized and existing pursuant to the laws of the State of New York.

26.     At all times relevant, Defendant Food Systems was and still is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and New York Labor Law § 190(3).

27.     Defendant China Chao was and still is a foreign domestic corporation organized and existing pursuant to the laws of the State of New York.

28.     At all times relevant, Defendant China Chao was and still is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and New York Labor Law § 190(3).

29.     Upon information and belief, Defendant Food Systems owns and/or operates Defendant China Chao, or the two fast-food restaurants at the Roosevelt Field Mall on Long Island.

30.     Defendant Biagio Schiano, upon information and belief, is the President and/or Chief Executive Officer of Defendants Food Systems and China Chao.

31.    Upon information and belief, Defendant Schiano communicated with an individual or agency in New York and caused the incorporation of Defendant Food Systems with the New York State Department of State as a foreign business corporation sometime in or about December 2001.

32.    Upon information and belief, Defendant Schiano communicated with an individual or agency in New York and caused the incorporation of Defendant China Chao with the New York State Department of State as a foreign business corporation sometime in or about March 2003.

33.    Defendant Schiano has authority to make payroll and personnel decisions for Defendants Food Systems and China Chao.

34.    At all relevant times, Defendant Schiano owned, operated, and/or controlled, and/or managed Defendants Food Systems and China Chao.

35.    At all relevant times, Defendant Schiano participated in running the daily operations of Defendants Food Systems and China Chao.

36.    At all relevant times, Defendant Schiano participated in the management and supervision of Plaintiffs Enguerra and Ravelas and their work for Defendants Food Systems and China Chao.

37.    At all relevant times, Defendant Schiano exercised operational control over Defendants Food Systems and China Chao, controlled significant business functions of Defendants Food Systems and China Chao, and acted on behalf of and in the interest of Defendants Food Systems and China Chao in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including as to those policies applied to Plaintiffs.

38.     At all relevant times, Defendant Schiano determined the wages and compensation of Defendants Food Systems and China Chao's employees, participated in establishing the schedules of their employees, maintained their employee records, and had the authority to hire and fire their employees, including as such practices applied to Plaintiffs.

39.     Upon information and belief, Defendant Schiano regularly coordinated with and communicated with Defendants' District Managers in New York, whether by phone call, text message or electronic mail, in directing and supervising the operations of Defendants Food Systems and China Chao's fast-food restaurants on Long Island.

40.     Defendant Schiano participated in the decision to hire the Plaintiffs.

41.     Defendant Schiano participated in deciding Plaintiffs' job duties and responsibilities.

42.     Defendant Schiano participated in deciding the manner in which Plaintiffs were paid.

43.     Defendant Schiano participated in deciding the hourly rates Plaintiffs were paid.

44.     Defendant Schiano participated in deciding the compensation each Plaintiff was paid.

45.     Defendant Schiano was responsible for ensuring each Plaintiff was paid properly.

46.     At all times hereinafter mentioned, Defendant Schiano was and still is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and New York Labor Law § 190(3).

47.     Upon information and belief, Defendant Roy Hui is the Vice President for Operations of Defendants Food Systems and China Chao.

48.    Defendant Hui has authority to make payroll and personnel decisions for the Defendants Food Systems and China Chao.

49.    At all relevant times, Defendant Hui operated, and/or controlled, and/or managed Defendants Food Systems and China Chao.

50.    At all relevant times, Defendant Hui participated in running the daily operations of Defendants Food Systems and China Chao.

51.    At all relevant times, Defendant Hui participated in the management and supervision of Plaintiffs Enguerra and Ravelas and their work for Defendants Food Systems and China Chao.

52.    At all relevant times, Defendant Hui exercised operational control over Defendants Food Systems and China Chao, controlled significant business functions of Defendants Food Systems and China Chao, and acted on behalf of and in the interest of Defendants Food Systems and China Chao in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including as to those policies applied to Plaintiffs.

53.    At all relevant times, Defendant Hui determined the wages and compensation of Defendants Food Systems and China Chao's employees, participated in establishing the schedules of their employees, maintained their employee records, and had the authority to hire and fire their employees, including as such practices applied to Plaintiffs.

54.    Upon information and belief, Defendant Hui regularly coordinated with and communicated with Defendants' Store Managers and District Managers in New York, whether by phone call, text message or electronic mail, in directing and supervising the operations of Defendants Food Systems and China Chao.

55.    At all times relevant, Defendant Hui went to visit and inspect the two Long Island fast-food restaurants several times in his capacity as the former District Manager and as the current Vice President for Operations.

56.    Defendant Hui participated in the decision to hire the Plaintiffs.

57.    Defendant Hui participated in deciding Plaintiffs' job duties and responsibilities.

58.    Defendant Hui participated in deciding the manner in which Plaintiffs were paid.

59.    Defendant Hui participated in deciding the hourly rates Plaintiffs were paid.

60.    Defendant Hui participated in deciding the compensation each Plaintiff was paid.

61.    Defendant Hui was responsible for ensuring each Plaintiff was paid properly.

62.    At all times hereinafter mentioned, Defendant Hui was and still is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and New York Labor Law § 190(3).

63.    Defendants Schiano and Hui operate and/or control Defendants Food Systems and China Chao.

64.    Defendants Schiano and Hui possess operational control over Defendants Food Systems and China Chao, and control significant functions of Defendants Food Systems and China Chao.

65.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, are responsible for paying employees, and share control over the employees.

66.    Each Defendant possessed substantial control over each Plaintiff's working conditions, and over the policies and practices with respect to the employment and compensation of each Plaintiff.

67.     Defendants dictated, controlled, and ratified the wage and hour and all related employee compensation policies during Plaintiffs' employment.

68.     Defendants jointly employed each Plaintiff and are Plaintiffs' employers within the meaning of the FLSA and the New York Labor Law.

69.     Defendants are employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

70.     Upon information and belief, Defendants own and operate over thirty (30) fast-food restaurant locations in malls and airports all over the United States.

71.     Upon information and belief, Defendants maintain control, oversight, and direction over the operations and employment practices in their fast-food restaurant establishments, including the Asian Chao and Fuji Grill establishments at Roosevelt Field Mall on Long Island, New York.

72.     At all times relevant, Defendants' Asian Chao and Fuji Grill establishments on Long Island, New York are "fast-food establishments" within the meaning of 12 N.Y.C.R.R. 146-3.13(b).

73.     The primary purpose of Defendants' Asian Chao and Fuji Grill establishments on Long Island, New York is serving food and drink items.

74.     Defendants' customers order and pay before eating their food and drinks.

75.     Defendants' customers purchase their food and beverage from Defendants' Long Island establishments for on-premise and/or take-out consumption.

76.     Upon information and belief, Defendants Food Systems and China Chao have common ownership.

77.     Upon information and belief, Defendants Food Systems and China Chao are owned and/or operated by Defendant Schiano, President and CEO.

78.     Defendants have interrelated operations.

79.     Defendants have common management.

80.     Defendants have a centralized control of labor relations

81.     Defendants Food Systems and China Chao share the same physical addresses in Roosevelt Field Mall, Garden City, State of New York, and at 750 Florida Central Parkway, Longwood, State of Florida.

82.     Defendants Food Systems and China Chao share the same corporate office address in Longwood, State of Florida.

83.     At all times hereinafter mentioned, the activities of the Defendants constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

84.     At all times hereinafter mentioned, Defendants employed employees, including the Plaintiffs herein, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling, or otherwise working on goods and materials which have moved in or produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA.

85.     The overtime wage provisions set forth in §§ 201 *et seq*. of the FLSA apply to the Defendants.

86.     At all relevant times, Defendants maintained control, oversight, and direction over their employees, including timekeeping, payroll and other employment practices that applied to them.

87.    At all relevant times, Defendants applied the same employment policies, practices and procedures to all their employees, including policies, practices, and procedures with respect to the failure to pay minimum wage for all hours worked, the failure to pay overtime wages for all hours worked in excess of 40 hours per workweek, and the failure to pay spread-of-hours pay.

88.    Defendants Schiano and Hui exercised complete domination and control of Defendants Food Systems and China Chao in respect to the conduct alleged in this Complaint, including violations of the Trafficking Victims Protection Act designed to coerce the continued performance of Plaintiffs and other fast-food workers in their employment notwithstanding the Defendants' failure to pay them for all of their hours of work, failure to pay correct overtime pay, and failure to pay spread-of-hours pay, required by federal and/or state laws.

89.    Defendants Schiano and Hui used their complete domination and control of Defendants Food Systems and China Chao to commit wrongs against Plaintiffs and other fast-food workers, including violations of the TVPA.

90.    Defendants Schiano and Hui are associated in fact and comprise a venture as that term is used in the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589 and 1595.

## COLLECTIVE ACTION ALLEGATIONS

91.    At all times relevant, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them minimum wage for all hours worked, and to pay them overtime pay for hours worked in excess of forty (40) hours each week.

92.     Upon information and belief, there are many current and former employees who are similarly situated to the Plaintiffs, who have been underpaid in violation of the FLSA. The named Plaintiffs are representatives of those other workers and are acting on behalf of the Defendants' current and former employees' interests as well as their own interest in bringing this action.

93.     Plaintiffs seek to proceed as a collective action with regard to the First Claim for Relief, pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following similarly situated employees:

>     All persons who are currently, or have been employed at
>     Defendants' Long Island fast-food restaurants, at any time during
>     the three (3) years prior to the filing of their respective consent
>     forms, who performed non-exempt duties.

94.     The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. These similarly-situated employees should be notified of and allowed to opt-into this action pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, persons similarly situated to the Plaintiffs, who have been unlawfully deprived of minimum wage and/or overtime pay in violation of the FLSA, will be unable to secure compensation to which they are entitled and which has been unlawfully withheld from them by the Defendants.

## CLASS ACTION ALLEGATIONS

95.     Plaintiffs also bring New York Labor Law claims on behalf of themselves and a class of persons under Rule 23 of the Federal Rules of Civil Procedure consisting of all persons who work or have worked for Defendants as hourly-paid fast-food employees in the State of

New York at any time from the six (6) years prior to the filing of this Complaint to the entry of the judgment in the case (the "Rule 23 Class").

96.     The persons on the Rule 23 Class identified above are so numerous that joinder of all members is impracticable.

97.     The Rule 23 Class Members are ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.

98.     Defendants have acted or refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

99.     There are questions of law and fact common to the Rule 23 Class that predominate over any questions solely affecting individual members of the Rule 23 Class, including but not limited to:

(a)     Whether the Class Representatives and Rule 23 Class are non-exempt employees entitled to premium overtime compensation for hours worked in excess of forty (40) hours per week;

(b)     What were the policies, practices, programs, procedures, protocols and plans of the Defendants regarding payment of overtime wages;

(c)     Whether Defendants failed and/or refused to pay Plaintiffs and the Rule 23 Class overtime pay for hours worked in excess of 40 hours per workweek within the meaning of New York Labor Law Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

(d)     Whether Defendants failed and/or refused to pay Plaintiffs and the Rule 23 Class
spread-of-hours pay for shifts lasting over ten (10) hours in violation of the New
York Labor Law and the Hospitality Industry Wage Order;

(e)     The nature and extent of the Rule 23 class-wide injury and the appropriate
measure of damages for the Class;

(f)     Whether Defendants' general practice of failing and/or refusing to pay Plaintiffs
and the Rule 23 Class overtime pay for hours worked in excess of forty (40) hours
per workweek, and of failing and/or refusing to pay Plaintiffs and the Rule 23
Class spread-of-hours pay was done willfully or with reckless disregard of the
wage and hour laws.

100.    The claims of the Plaintiffs are typical of the claims of the Rule 23 Class they
seek to represent. Plaintiffs and the Rule 23 Class work or have worked for Defendants in excess
of forty (40) hours per week and have not been paid overtime wages for all the hours they have
worked in excess of forty (40) hours per week. Defendants have acted and have refused to act on
grounds generally applicable to the Rule 23 Class, thereby making declaratory relief with respect
to the Rule 23 Class appropriate.

101.    The relief sought by Plaintiffs is typical of the relief which would be sought by
each member of the Class in separate actions. All the Class Members were subject to the same
corporate practice of the Defendants, as alleged herein, of failing to pay overtime compensation
for hours worked in excess of forty (40) hours per week, and of failing to pay spread-of-hours
pay for shifts in which the spread of hours exceeded ten (10) hours.

102.    Plaintiffs will fairly and adequately represent and protect the interests of the Rule
23 Class.

103.    Plaintiffs have retained counsel competent and experienced in class actions and in labor and employment litigation.

104.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation, particularly in the context of a wage and hour litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. Class action treatment will permit a large member of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources. Treating the claims as a class action would result in a significant savings of these costs. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices and procedures. Although the relative damages suffered by individual Rule 23 Class Members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

105.    Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing those risks.

## STATEMENT OF FACTS

106.    In or about May 2021, Plaintiffs Enguerra and Ravelas were hired by Defendants to work as kitchen staff for Defendants at their Roosevelt Field Mall restaurants.

107.    In or about early April 2023, Plaintiff Enguerra resigned from his employment with Defendants, but was convinced to return to work by Defendant Hui in or about early October 2023.

108.    Both Plaintiffs Enguerra and Ravelas continue to work for Defendants to date.

109.    During the first three weeks of their employment with Defendants, Plaintiffs Enguerra and Ravelas each worked from opening to closing hours, seven days a week, with no days off. Their work schedules during that period were as follows:

Monday to Thursday          = from 9:30 AM to 8:30 PM

Friday and Saturday          = from 9:30 AM to 9:30 PM

Sunday          = from 9:30 AM to 7:30 PM

Plaintiff Enguerra's Work Schedules

110.    Starting on the fourth week of his employment, Plaintiff Enguerra was regularly scheduled and did work from opening to closing hours, at least five days a week.

Wednesday and Thursday          = from 9:30 AM to 8:30 PM

Friday and Saturday          = from 9:30 AM to 9:30 PM

Sunday          = from 9:0 AM to 7:30 PM

111.    Plaintiff Enguerra, throughout the course of his employment with Defendants, regularly worked more than forty (40) hours per week at Defendants' Long Island restaurants, where he provided various services, including, preparing and cooking Chinese dishes for the

Asian Chao restaurant; and preparing, cooking, and serving teriyaki dishes at the Fuji Grill restaurant.

112.    Defendants paid Plaintiff Enguerra every two weeks, initially at seventeen dollars ($17.00) an hour. In April 2022, Defendants increased Plaintiff Enguerra's hourly rate to nineteen dollars ($19.00). In November 2022, Defendants again increased Plaintiff Enguerra's hourly rate to twenty dollars ($20.00)

113.    Sometime in June 2024, Defendants started paying Plaintiff Enguerra on a weekly basis and started paying him for the first time spread-of-hours pay at the rate of fifteen dollars ($15.00) for each day he worked a span of at least ten (10) hours.

114.    On or about August 16, 2024, Defendant Hui went to Defendants' Long Island restaurants and discussed with Plaintiff Enguerra. He gave Plaintiff Enguerra a merit increase, thereby increasing Plaintiff Enguerra's hourly rate to twenty four dollars and ten cents ($24.10) per hour.

115.    At the time of the merit increase, and to date, Plaintiff Enguerra's regular work schedules were/are as follows:

> Monday and Tuesday        = from 9:30 AM to 8:30 PM
>
> Friday and Saturday        = from 9:30 AM to 9:30 PM
>
> Sunday                     = from 9:30 AM to 7:30 PM

116.    Starting in or about the third week of August 2024, Defendants uniformly paid Plaintiff Enguerra every week forty (40) hours of regular hours and eight (8) hours of overtime pay, despite and notwithstanding the fact that Defendants knew Plaintiff Enguerra was working at least fifty three and a half (53.5) hours each week.

117.    Starting in or about the third week of August 2024, Defendants refused to pay Plaintiff Enguerra any spread-of-hours pay, despite him working a span of ten hours several days each workweek.

Plaintiff Enguerra's Complaints

118.    On or about January 10, 2024, there was a severe snow storm on Long Island that resulted in the Roosevelt Field Mall losing its electrical supply and forcing the eventual closure of its tenant-stores.

119.    On that day, Plaintiff Enguerra was scheduled to open Defendants' fast-food restaurants and was already at the mall before the opening hours (9:30 AM).

120.    Upon information and belief, the mall operators did not know when they could restore electricity at the mall.

121.    Upon instructions by the Store Manager, Plaintiff Enguerra carried about twenty (20) boxes of their restaurants' chicken meat stocks, as well as vegetables and other meats, from the walk-in cooler to the freezer so that these would not spoil.

122.    Upon information and belief, Defendants had instructed the Store Manager to not leave the mall until electricity was restored or if not yet restored, until late in the evening, so that the transferred chicken meat stocks and vegetables would be brought back to the walk-in coolers so that these would be ready to be used and not frozen the following day.

123.    Plaintiff Enguerra stayed behind to assist the Store Manager who was female and who felt unsafe during that cold, very dark time at the mall's food court, and carried back the boxes of chicken meat stocks and vegetables to the walk-in coolers.

124.    Plaintiff Enguerra left the mall's food court area around 7:30 in the evening.

125. Upon information and belief, the Store Manager had informed Defendants that she was being assisted at that time by Plaintiff Enguerra, and that Defendants knew that Plaintiff Enguerra was at the mall assisting the Store Manager complying with their instructions to preserve the chicken stocks, meat and vegetables.

126. Plaintiff Enguerra expected to be paid for his hours of work during that day.

127. Unfortunately, Defendants decided not to compensate Plaintiff Enguerra for his hours of work on January 10, 2024 despite their knowledge that he actually did work for the benefit of Defendants that day.

128. Plaintiff Enguerra verbally complained to his Store Manager about not getting paid for his services on January 10, 2024.

129. The Store Manager promised to advocate for him with Defendants.

130. Upon information and belief, Defendants denied the Store Manager's advocacy for Plaintiff Enguerra to be paid on the ground that there was allegedly no budget to pay him for his services.

131. Further, upon information and belief, Defendant Hui told the Store Manager that if Plaintiff Enguerra insisted on getting paid, that Plaintiff Enguerra could simply quit and find work elsewhere, and that Defendants could easily find a replacement for him. Defendants' response was relayed by the Store Manager to Plaintiff Enguerra.

132. After having heard the Store Manager's report about Defendants' response to her advocacy, Plaintiff Enguerra decided not to press his demand to be paid for his services on January 10, 2024 as he did not wish to lose his job.

133.    On or about December 5, 2024, Plaintiff sent an electronic message to the Store Manager complaining about not getting paid for all his hours of work and that he was no longer getting paid any spread-of-hours pay.

134.    Upon information and belief, the Store Manager, on December 6, 2024, forwarded Plaintiff Enguerra's complaint to Defendant Hui and advocated that spread-of-hours pay be re-implemented.

Plaintiff Ravelas's Work Schedules

135.    On the fourth week of his employment, Plaintiff Ravelas was scheduled and did work from opening to closing hours, six days that week.

136.    Thereafter, Plaintiff Ravelas was regularly scheduled by Defendants and did work during the following hours every week:

| | |
|---|---|
| Monday and Tuesday | = from 9:30 AM to 8:30 PM |
| Wednesday | = from 12 noon to 8:30 PM |
| Saturday | = from 12 noon to 9:30 PM |
| Sunday | = from 9:30 AM to 7:30 PM |

137.    Plaintiff Ravelas, throughout the course of his employment with Defendants, regularly worked more than forty (40) hours per week at Defendants' Long Island restaurants, where he provided various services, including, dishwashing, preparing, cooking and serving teriyaki dishes to customers, and even manning the cashier machine at the Fuji Grill restaurant.

138.    Defendants paid Plaintiff Ravelas every two weeks, initially at fifteen dollars ($15.00) per hour. After about a year, Defendants increased Plaintiff Ravelas's hourly rate to sixteen dollars ($16.00). In or about early 2023, Defendants increased his hourly rate to seventeen dollars ($17.00), and increased it again to eighteen dollars ($18.00) in or about May

2023. The last increase, making his hourly rate to nineteen dollars ($19.00), was made this past December 2024.

139.    Sometime in June 2024, Defendants started paying Plaintiff Ravelas on a weekly basis and started paying him for the first time spread-of-hours pay at the rate of fifteen dollars ($15.00) for each day he worked a span of at least ten (10) hours.

140.    Starting in or about the third week of August 2024, Defendants refused to pay Plaintiff Ravelas any spread-of-hours pay, despite him working a span of at least ten (10) hours several days each workweek.

Plaintiff Ravelas's Complaints

141.    On or about October 19, 2024, Plaintiff Ravelas complained to the Store Manager why he had not been receiving any more spread-of-hours pay and why his overtime pay seemed off.

142.    The Store Manager responded that she would look into it and that she would forward his concerns to Defendant Hui. Upon information and belief, the Store Manager did forward Plaintiff Ravelas's complaint to Defendant Hui who was at Long Island at that time.

143.    On the same day, the Store Manager informed Plaintiff Ravelas of Defendant Hui's response that he (Defendant Hui) was contemplating of increasing Plaintiff Ravelas's hourly rate another dollar higher, but that if Plaintiff Ravelas continued to complain, that he (Plaintiff Ravelas) could kiss the increase good bye and could look for another job as well.

144.    On or about December 5, 2024, Plaintiff Ravelas decided to send an electronic message to the Store Manager formally complaining about not getting paid for all his hours of work, and thereby his overtime payment not being computed correctly, and also about not receiving any spread-of-hours pay.

145.    Upon information and belief, the Store Manager, on December 6, 2024, forwarded Plaintiff Ravelas's complaint to Defendant Hui and advocated that spread-of-hours pay be re-implemented.

Defendants' Response to Plaintiffs' Complaints

146.    Upon information and belief, Defendant Hui called up the Store Manager sometime immediately after the Store Manager forwarded Plaintiffs Enguerra and Ravelas's e-mail complaints to him.

147.    Upon information and belief, Defendant Hui got mad at the Store Manager for copy-furnishing the corporate office a copy of the e-mail complaints and for not talking to him directly about the employees' concerns.

148.    Upon information and belief, Defendant Hui told the Store Manager that any employee complaining about his/her wages was dispensable and replaceable. Likewise upon information and belief, Defendant Hui instructed the Store Manager to tell Plaintiffs Enguerra and Ravelas not to talk to other employees about their complaints under pain of immediate termination. Likewise upon information and belief, Defendant Hui advised the Store Manager to tell Plaintiffs Enguerra and Ravelas not to escalate their complaints, or else they would be immediately terminated.

149.    The Store Manager did relay to both Plaintiffs Defendant Hui's response to their e-mail complaints.

150.    On December 7, 2024, one of Defendants' General Managers, by the name of Mr. Pino, spoke to Plaintiff Ravelas and inquired about his email complaint. Plaintiff Ravelas confirmed with Mr. Pino that he had not been paid spread-of-hours recently, and that his overtime hours seemed to have been incorrectly computed.

151.    Defendants' Mr. Pino instructed Plaintiff Ravelas to list down his unpaid claims, but Plaintiff Ravelas responded that he did not have the means to do the computation as Defendants had the records of his work-hours.

152.    On December 8, 2021, Defendant Hui called up Plaintiff Ravelas and asked him how he got the email address of the store. Defendant Hui wanted Plaintiff Ravelas to admit that it was the current Store Manager who gave him the email address. But Plaintiff Ravelas answered truthfully by stating that he had known of the store's email address from the former General Manager, Boss Henny, who gave it to him. Nonetheless, it was clear from their discussion that Defendant Hui wanted to implicate the current Store Manager about his complaints.

153.    On December 20, 2024, Defendants sent out letters addressed to both Plaintiffs Enguerra and Ravelas acknowledging that there was a mishandling of worked hours, and that they were unable to calculate the exact spread of hour for past pay periods.

154.    Defendants adjusted Plaintiff Enguerra's spread-of-hours rate from fifteen dollars ($15.00) to sixteen dollars ($16.00), and made a retroactive pay adjustment equivalent to three hours per week from 08/30/2024 through 12/06/2024.

155.    Defendants adjusted Plaintiff Ravelas's spread-of-hours rate from fifteen dollars ($15.00) to sixteen dollars ($16.00), and made a retroactive pay adjustment equivalent to two hours per week from 08/30/2024 through 12/06/2024.

156.    Defendants' spread-of-hours adjustment payments made to Plaintiffs Enguerra and Ravelas were not based on actual work-hour records available to Defendants themselves, but were mere approximations of the number of days per week that they believed each Plaintiff had worked a span of at least ten (10) hours.

157.    Defendants' spread-of-hours adjustment payments made to Plaintiffs Enguerra and Ravelas did not take into account the period before August 30, 2024 when each Plaintiff actually did work more than ten hours on each of several days per pay period.

Plaintiffs' Reaction to Defendants' Response to their E-mail Complaints

158.    Plaintiffs understood that Defendants tried to attempt to resolve the issue of the non-payment of their spread-of-hours pay, but knew that Defendants failed to address the same issue of non-payment of spread-of-hours pay for the period before August 2024.

159.    Plaintiffs also knew that Defendants' response failed to address their concerns about the non-payment of all their hours of work, which affected the correct payment of their overtime hours.

160.    Because of what their Store Manager had relayed to them about Defendant Hui's threat if they were to escalate their complaints, Plaintiffs decided to remain quiet and not press anymore their concerns about correct payment of all their hours of work.

161.    Each Plaintiff feared he would lose his job if he would escalate his wage and hour concerns with Defendants.

Defendants' Employment Practices

162.    At all times relevant, Defendants employed Plaintiffs who performed and continue to perform duties and responsibilities that serve the objectives of Defendants' business of operating fast-food restaurants.

163.    Defendants employed and continue to employ other similarly-situated fast-food restaurant workers.

164.    Defendants employed Plaintiffs and other similarly-situated fast-food restaurant workers under the FLSA.

165.    Defendants paid Plaintiffs and other similarly-situated fast-food restaurant workers an hourly wage.

166.    Upon information and belief, Defendants had power over personnel and payroll decisions regarding Plaintiffs and other similarly-situated restaurant workers.

167.    Upon information and belief, Defendants had the power to hire and fire the Plaintiffs and other similarly-situated restaurant workers, establish and pay their wages, set their work schedules, and maintain their employment records.

168.    Defendants regularly scheduled and required Plaintiffs and similarly-situated workers to work from opening hours to closing hours, which often span a period of at least ten (10) hours.

169.    Defendants have observed Plaintiffs and other similarly-situated restaurant workers working even before they clock in or before the start of their work shifts or opening hours, such as by cleaning the stalls, signages, and the surrounding areas of Defendants' store frontages.

170.    Even though Defendants knew that Plaintiffs and similarly-situated restaurant workers were working during "off-the-clock" hours, Defendants failed to compensate Plaintiffs and other similarly-situated employees for their work, electing instead to sit back and accept the benefit of Plaintiffs and similarly-situated employees' uncompensated work.

171.    Plaintiffs and other similarly-situated employees each regularly worked over forty (40) hours per week. Plaintiffs worked on average approximately at least 45 – 55 hours per workweek.

172.    Upon information and belief, Defendants typically and regularly did not pay all the hours of work of Plaintiffs and other similarly-situated employees.

173.    Upon information and belief, Defendants regularly prepared two sets of work schedules for Plaintiffs and similarly-situated employees, such that one schedule would truly indicate employees' work-hours to span at least ten (10) hours, and another schedule to indicate otherwise to avoid the payment of spread-of-hours pay.

174.    Upon information and belief, Defendants regularly prepared two sets of payroll records for Plaintiffs and similarly-situated employees, such that one payroll record would truly reflect the number of hours Plaintiffs and similarly-situated employees actually worked, and another payroll record to indicate otherwise to avoid the payment of correct overtime pay and/or spread-of-hours pay.

175.    Upon information and belief, Defendants' practice of having two separate sets of work schedules and of payroll records was expressly directed and dictated by Defendant Hui to the Store Manager and which practice was known to and condoned and ratified by Defendant Schiano.

176.    Upon information and belief, the incorrect or untrue, edited set of payroll records reflected incorrect number of work-hours for certain employees, including Plaintiffs, to avoid the payments by Defendants of spread-of-hours pay and of correct overtime compensation.

177.    As and by way of example, Plaintiff Ravelas reported to work and rendered services on the following days and hours:

October 21, 2024      = from 9:16 AM to 8:42 PM

October 22, 2024      = from 9:26 AM to 8:43 PM

October 23, 2024      = from 11:42 AM to 8:44 PM

October 26, 2024      = from 11:44 AM to 9:42 PM

178.    Upon information and belief, Defendants, upon instructions by Defendant Hui, and with the knowledge of and ratification by Defendant Schiano, edited or changed some of Plaintiff Ravelas's hours for purposes of their payroll computation, such that his work-hours for October 21, 2024 were counted or deemed to be only from 9:30 AM to 7:00 PM, and his work-hours for October 22, 2024 were counted or deemed to be only from 9:30 AM to 7:00 PM, thereby depriving Plaintiff Ravelas of any spread-of-hours pay for those two days and the correct computation of his total weekly hours of work that adversely affected his overtime compensation.

179.    As and by way of another example, Plaintiff Ravelas reported to work and rendered services on the following days and hours:

November 25, 2024   = from 9:19 AM to 8:37 PM

November 26, 2024   = from 11:48 AM to 8:44 PM

November 27, 2024   = from 11:56 AM to 8:46 PM

November 29, 2024   = from 2:10 PM to 9:54 PM

November 30, 2024   = from 11:52 AM to 7:45 PM

180.    Upon information and belief, Defendants, upon the instructions by Defendant Hui, and with the knowledge of and ratification by Defendant Schiano, edited or changed some of Plaintiff Ravelas's hours for purposes of their payroll computation, such that his work-hours for November 25, 2024 were counted or deemed to be only from 9:30 AM to 7:00 PM, thereby depriving Plaintiff Ravelas of any spread-of-hours pay and the correct computation of his total weekly hours of work that adversely affected his overtime compensation.

181.    As a result of Plaintiffs and other similarly-situated employees not being paid for all hours worked, Plaintiffs and other similarly-situated employees were not paid overtime compensation for all the hours they worked over forty (40) each workweek.

182.    Other than as stated in the following paragraph, Defendants, upon information and belief, failed to pay Plaintiffs and other similarly-situated employees spread-of-hours pay when they worked a span of at least ten (10) hours on several work-days.

183.    Upon information and belief, Defendants only started paying Plaintiffs and other similarly-situated employees spread-of-hours pay for the period between June and August 2024, at the rate of fifteen dollars ($15.00), which was not even the minimum wage for workers on Long Island during said pertinent period of time.

184.    Defendants did attempt to make adjustments to the spread-of-hours payments in early December 2024, but still failed to make any adjustments or payments for services rendered before August 2024 that would have been paid the correct spread-of-hours rate of pay.

185.    Upon information and belief, Defendants have engaged lawyers and sought counsel to assist them in complying with New York and federal labor legislation.

186.    Defendants were or should have been aware that the New York Labor Law and its Hospitality Industry Wage Order required them to pay their employees an additional hour at the minimum wage for each shift that spanned over a 10-hour period.

187.    Defendants' failure to pay Plaintiffs and Class Members proper spread-of-hours pay was willful, intentional and in bad faith.

188.    Defendants' unlawful conduct was widespread, repeated and consistent.

189.    Despite legal advice, Defendants knowingly and willfully engaged in the above-mentioned violations of the FLSA and New York Labor law and its regulations.

**FIRST CLAIM FOR RELIEF**
**Non-Payment of Minimum and Overtime Pay in Violation of the FLSA**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

190.    Plaintiffs allege and incorporate by reference all allegations in all preceding paragraphs.

191.    Defendants have engaged in a widespread pattern and practice of violating the FLSA, as described in this Class and Collective Action Complaint.

192.    Plaintiffs have consented in writing to be a party in this action, pursuant to 29 U.S.C. § 216(b). Attached as Exhibit "A" are Plaintiffs' Consent to be a Party Plaintiff.

193.    At all relevant times, each Defendant has been an employer engaged in interstate commerce consistent with 29 U.S.C. §§ 2016(a) and 207(a). At all times relevant, Defendants employed Plaintiffs and the members of the Collective consistent with the terms of the FLSA.

194.    At all relevant times, upon information and belief, Defendants have had annual gross revenues in excess of $500,000.00.

195.    Upon information and belief, Defendants employ or employed more than four (4) workers who fall under the category of "non-exempt employees" pursuant to the FLSA, and these employees regularly and recurrently either engaged in commerce or handled or otherwise worked on goods or materials that had been moved in or produced for commerce, such as when they accepted delivery of supplies ordered from out-of-state.

196.    Upon information and belief, at all times relevant, the wage and hour and all related employee compensation policies of Defendants are and were centrally and collectively dictated, controlled, and ratified by the Defendants.

197.    Plaintiffs and, upon information and belief, members of the Collective, each worked more than forty (40) hours in one or in each of several workweeks.

198.    Defendants' practice and policy of not paying Plaintiffs and other similarly-situated employees for work performed, including during off-the-clock hours, violated the FLSA, 29 U.S.C. § 207.

199.    Defendants' practice and policy of not paying Plaintiffs and other similarly-situated employees for all of their hours of work violated the FLSA.

200.    Defendants' practice and policy of not paying Plaintiffs and other similarly-situated employees overtime compensation at the rate of one and one-half times their regular rate of pay for all the hours they worked over forty (40) each workweek violated the FLSA.

201.    Defendants' failure to keep accurate records of all of the hours worked each workday and the total hours worked each workweek by Plaintiffs and other similarly-situated employees violated the FLSA, 29 C.F.R. § 516.2(a)(7).

202.    Defendants' violations of the FLSA, as described in this Class and Collective Action Complaint, have been willful and intentional. Defendants have failed to make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs and other similarly-situated current and former employees.

203.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

204.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and all other similarly-situated employees have suffered damages by being denied minimum and/or overtime wages in accordance with 29 U.S.C. §§ 201 *et seq*.

205.    As a result of the unlawful acts by Defendants, Plaintiffs and other similarly-situated current and former employees have been deprived of minimum and/or overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery

of such amounts, liquidated damages, prejudgment interest, attorney's fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
### Violations of the Minimum and Overtime Pay - New York Labor Law
### (Brought on behalf of the Plaintiffs and the Rule 23 Class)

206.    Plaintiffs allege and incorporate by reference all allegations in all preceding paragraphs.

207.    At all relevant times, Plaintiffs and the members of the Class have been employees of the Defendants, and the Defendants have been their employer within the meaning of the New York Labor Law, §§ 2 and 651.

208.    Defendants failed and have failed to pay Plaintiffs and the members of the Class compensation for all their hours of work, in violation of NYLL Article 19, §§ 650 *et seq.*  and the supporting New York State Department of Labor regulations, including at least minimum wages for the hours that were not paid, and premium overtime pay for all hours of work in excess of forty (40) hours per workweek.

209.    Defendants violated Plaintiffs' rights and the rights of the members of the Class, by failing to pay them for all of the hours actually worked by them. Defendants' violations of the NYLL have been willful and intentional.

210.    Defendants' violations of the NYLL have caused Plaintiffs and the members of the Class irreparable harm and injury.

211.    Due to Defendants' violations of the NYLL, Plaintiffs and the members of the Class are entitled to recover from Defendants their unpaid wages, liquidated damages, as well as reasonable attorney's fees, costs and disbursement of the action, and pre-judgment and post-judgment interests.

### THIRD CLAIM FOR RELIEF
### Violation of the Spread-of-Hours Pay – New York Labor Law
### (Brought on behalf of the Plaintiffs and the Rule 23 Class)

212.    Plaintiffs allege and incorporate by reference all allegations in all preceding paragraphs.

213.    Plaintiffs and Class Members worked shifts in which the spread of hours exceeded ten (10) hours, as defined by 12 N.Y.C.R.R. § 146-1.6.

214.    Throughout the six years prior to the filing of this Class Action Complaint, there have been times in which Plaintiffs and the Class Members were entitled to an additional hour of pay at the "basic minimum hourly rate", as defined by 12 N.Y.C.R.R. §§ 146-1.2(1)-(2).

215.    Defendants failed to pay Plaintiffs and Class Members one additional hour pay at the basic minimum wage rate before allowances for each day Plaintiffs' and Class Members' spread of hours exceeded ten (10) hours, in violation of N.Y. Lab. Law §§ 650 *et seq*., as codified by 12 N.Y.C.R.R. § 146-1.6.

216.    Defendants' failure to pay Plaintiffs and the Class an additional hour of pay for each day where the spread of hours exceeded ten (10) hours was willful within the meaning of N.Y. Lab. Law § 663.

217.    As a result, Defendants owe Plaintiffs and the Class Members their unpaid spread-of-hours pay, together with liquidated damages, interests, attorney's fees and costs.

### FOURTH CLAIM FOR RELIEF
### Violation of the Trafficking Victims Protection Act, 18 U.S.C. § 1589(a)

218.    Plaintiffs allege and incorporate by reference all allegations in all preceding paragraphs.

219.    It is a violation of the TVPA to "knowingly provide[] or obtain[] the labor or services of a person . . . (2) by means of serious harm or threats of serious harm . . . ; or (4) by

means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm . . ." 18 U.S.C. § 1589(a).

220.    The TVPA defines "serious harm" to include nonphysical harm, "including psychological, financial, or reputational harm, that is sufficiently serious . . . to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services to avoid incurring that harm." *Id.* § 1589(c)(2).

221.    Defendants knowingly provided and obtained the labor and services of Plaintiffs by means of serious harm and threats of serious harm, including without limitation, psychological, financial or reputational harm, that was sufficiently serious to compel a reasonable person of the same background and in the same circumstance to perform or to continue performing labor or services in order to avoid incurring that harm.

222.    Defendants knowingly provided and obtained the labor and services of Plaintiffs by means of a scheme, plan, or pattern intended to cause each Plaintiff to believe that, if he did not perform such labor or services, he would suffer serious harm, including without limitation, psychological, financial or reputational harm, that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

223.    Defendants knowingly used such threats to exert pressure on each Plaintiff to continue working for Defendants and to prevent him from seeking employment elsewhere, telling him that they would terminate his employment. This was done with the purpose of obtaining Plaintiffs' continued labor for Defendants.

224.    Defendants' use of such means to obtain the labor or services of Plaintiffs was knowing and intentional.

225.    Each Plaintiff suffered damages as a direct and proximate result of Defendants' conduct. These damages include, but are not limited to, emotional distress damages and the loss of proper and correct wage payments, including spread-of-hours pay and compensation for all hours worked, including overtime pay.

226.    Each Plaintiff suffered and continues to suffer emotional distress and financial distress due to Defendants' coercive tactics resulting in his forced labor and/or trafficking.

227.    The emotional effects each Plaintiff suffered and continues to suffer include disrupted sleeping, emotional breakdowns, nightmares, ongoing feelings of fear, difficulty developing trust, anxiety, depression, difficulty concentrating and stress.

228.    Each Plaintiff is entitled to compensatory and punitive damages and restitution in amounts to be determined at trial, together with reasonable attorney's fees and the costs of this action.

## JURY DEMAND

229.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly-situated persons, request judgment against each Defendant, jointly and severally, awarding them and all others similarly situated:

(a)     Unpaid wages and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. §§ 201 *et seq*. and the supporting United States Department of Labor regulations;

(b)     Certification of this case as a collective action under 29 U.S.C. § 216(b) and a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(c)     Designation of Plaintiffs as representatives of the FLSA Collective Plaintiffs;

(d)     Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel;

(e)     Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under New York Labor Law, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations;

(f)     Unpaid minimum wages, overtime and spread-of-hours pay pursuant to New York Labor Law, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, plus liquidated damages and pre- and post-judgment interest;

(g)     Compensatory and punitive damages for violations of the TVPA;

(h)     All attorney's fees and costs incurred in prosecuting these claims; and

(i)     Such other relief as this Court deems just and proper.

Dated: Woodside, New York.
         January 8, 2025.

                    LAW OFFICE OF FELIX VINLUAN

By:    */s/ Felix Q. Vinluan*
FELIX Q. VINLUAN (FV6788)
6910 Roosevelt Avenue, 2nd Floor
Woodside, NY 11377
Tel. No. 718-478-4488
Email: fqvinluan@yahoo.com
*Attorney for the Plaintiffs and the*
*Putative Class*

## **VERIFICATION**

STATE OF NEW YORK )
                                  ) S.S.
COUNTY OF QUEENS )

We, RYAN ENGUERRA and FROILEX RAVELAS, are the Plaintiffs in the within

action. Each of us has read the foregoing Complaint and knows the contents thereof.    The

contents thereof are true to each of our own knowledge, except as to matters therein stated to be

alleged upon information and belief, and as to those matters, each of us believes them to be true.


_____          _____
      **RYAN ENGUERRA**                            **FROILEX RAVELAS**


SUBSCRIBED AND SWORN to before me this 8th day of January 2025 in Queens

County, State of New York.

Notary Public

FELIX Q. VINLUAN
Notary Public, State of New York
No. 02VI6129101
Qualified in Nassau County
Commission Expires June 20, 20__

38

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
RYAN ENGUERRA and FROILEX RAVELAS,                )
on behalf of themselves and all others similarly        )
situated,                                                               )
                                    Plaintiffs,        )        Docket No. 25-cv-
                                               )
           - against -                                         )
FOOD SYSTEMS UNLIMITED, INC., CHINA        )
CHAO, INC., BIAGIO SCHIANO, and                      )
ROY HUI,                                                              )
                                Defendants.        )
-----------------------------------------------------------------------x

## CONSENT TO BE A PARTY PLAINTIFF

1.     I hereby give my consent to become a party plaintiff in the above-captioned lawsuit. I work as a non-exempt, hourly-paid employee of Defendants, and I have not been paid for all my hours of work, including overtime hours and spread-of-hours pay. I understand this lawsuit is being brought under the Fair Labor Standards Act. I agree and consent to become a party plaintiff and to be bound by any adjudication of this action by the Court, whether favorable or unfavorable. I further agree to be bound by any approved settlement or judgment entered by the Court.

2.     I designate Felix Q. Vinluan, Esq. and/or the Law Office of Felix Vinluan, to represent me for all purposes in the action. I also designate said lawyer/law firm as my agents to make decisions on my behalf concerning the litigation and method and manner of conducting this litigation and, if necessary, I agree to participate in discovery and attend a deposition or trial. I also understand that if my claim is not successful, I will not owe my lawyers any fees.

Signature

Name               RYAN A. ENGUERRA

Address            4011 72ND STREET APT. 1B

City, State, Zip      WOODSIDE NEW YORK, 11377

Date                1-8-2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
RYAN ENGUERRA and FROILEX RAVELAS,        )
on behalf of themselves and all others similarly  )
situated,                                 )
                          Plaintiffs,     )        Docket No. 25-cv-
                                          )
        - against -                       )
FOOD SYSTEMS UNLIMITED, INC., CHINA       )
CHAO, INC., BIAGIO SCHIANO, and           )
ROY HUI,                                  )
                          Defendants.     )
---------------------------------------------------------------------x

### CONSENT TO BE A PARTY PLAINTIFF

1.      I hereby give my consent to become a party plaintiff in the above-captioned lawsuit. I work as a non-exempt, hourly-paid employee of Defendants, and I have not been paid for all my hours of work, including overtime hours and spread-of-hours pay. I understand this lawsuit is being brought under the Fair Labor Standards Act. I agree and consent to become a party plaintiff and to be bound by any adjudication of this action by the Court, whether favorable or unfavorable. I further agree to be bound by any approved settlement or judgment entered by the Court.

2.      I designate Felix Q. Vinluan, Esq. and/or the Law Office of Felix Vinluan, to represent me for all purposes in the action. I also designate said lawyer/law firm as my agents to make decisions on my behalf concerning the litigation and method and manner of conducting this litigation and, if necessary, I agree to participate in discovery and attend a deposition or trial. I also understand that if my claim is not successful, I will not owe my lawyers any fees.

Signature _____

Name       FROILEX RAVELAS

Address    147 03 24TH AVE
           WHITE STOWE NEW YORK

City, State, Zip    11357

Date       JAN 8 2025